UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RICHARD LAZUR, <br><br> Plaintiff, <br><br> v. <br><br> LAKE COUNTY SHERIFF, WARDEN, ASSISTANT DEPUTY WARDEN, GORE, STOZER, and CLASSIFICATION OFFICER, <br><br> Defendants. | CAUSE NO. 2:24-CV-309 DRL-SJF |

OPINION AND ORDER

Richard Lazur, a prisoner without a lawyer, filed a complaint about the conditions he was held in as a pretrial detainee at the Lake County Jail. ECF 6. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Lazur alleges that he was held as a pretrial detainee at the Lake County Jail from November 23, 2023 through July 21, 2024. He complains about several aspects of his detention over these eight months. As a pretrial detainee, Mr. Lazur is protected under the Fourteenth Amendment from being held in "conditions that 'amount to

punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Conditions may amount to punishment if as a result, inmates are denied "the minimal civilized measure of life's necessities," which include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). The Fourteenth Amendment also requires that pretrial detainees be reasonably protected from a substantial risk of serious harm. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

To state a Fourteenth Amendment claim, a pretrial detainee must allege a defendant "did not take reasonable available measures to abate the risk of serious harm to [plaintiff], even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman v. Madison Cnty.* 108 F.4th 561, 572 (7th Cir. 2024) (emphasis omitted). "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Mays v. Emanuele*, 853 F. Appx. 25, 27 (7th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). In determining whether an action or condition is reasonable or whether it amounts to punishment, the court considers the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). Of note, "negligent conduct does not offend the Due Process Clause," so allegations of negligence, even gross negligence, do not state a Fourteenth Amendment claim. *Miranda*, 900 F.3d at 353.

A. *Exercise.*

Mr. Lazur complains that the jail did not provide sufficient opportunities to exercise, and the lack of exercise caused him to lose weight and muscle, develop high blood pressure, and seek mental health care for stress-induced anxiety, depression, and sleep deprivation. Mr. Lazur says he was not allowed to go to recreation because he did not have the shoes the jail required to participate in recreation. To go to recreation, an inmate had to purchase shoes from commissary that cost $20.00, and Mr. Lazur did not have those. He could not exercise in his cell either, he alleges, because there was not enough free space. Eight and sometimes nine people were assigned to the cell. The bunks took up most of the space, leaving only 50-60 square feet free for them to share. The dayrooms were similarly crowded. Four cells shared one dayroom, which meant the space was shared by 32 men, though that number would sometimes increase to up to 40 men when the jail was overcrowded. With that many men, there was hardly room to move around, let alone exercise. However, even access to the dayroom was limited by frequent lockdowns, ranging from two to fourteen days at a time due to COVID-19 outbreaks and staff shortages. Mr. Lazur alleges he spoke to Lieutenant Niecy Gore about the overcrowding, and she stated the jail was full and there was nothing she could do because all the sections were just as overcrowded. Mr. Lazur alleges that administration could have housed the overflow inmates in the new pods, which have much bigger dayrooms.

Courts have recognized that the ability to exercise is a necessity of life. *See Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001). A crowded cell that doesn't allow for exercise

can be remedied by access to a dayroom or recreational area, and conversely, limited access to recreation can be counteracted by the ability to exercise in one's cell. But here, Mr. Lazur has plausibly alleged that the combined circumstances of his confinement prevented him from getting reasonably adequate exercise during recreation, in the dayroom, or in his cell to such an extent that his health was harmed. *See Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015).

Not all the defendants have the necessary personal involvement in Mr. Lazur's access to exercise opportunities to be held liable on this claim. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (noting liability under 42 U.S.C. § 1983 requires personal involvement in the alleged constitutional violation). Mr. Lazur sues both the Lake County Sheriff and the jail's Warden. Both have supervisory authority over the jail, but it is more likely that the Warden would make decisions about the daily operations of the jail, including the requirements imposed to access recreation and ensuring inmates have other opportunities to exercise. Therefore, Mr. Lazur may proceed against the Lake County Jail Warden, but not the Sheriff, on this claim. However, Mr. Lazur does not say, nor can the court reasonably infer, what responsibility the Assistant Deputy Warden, Lieutenant Niecy Gore, or the Classification Officer would have over the circumstances that prevented him from exercising. Finally, he alleges that Sergeant Stozer answered his grievances concerning this issue, but a defendant's involvement in the grievance process does not, without more, make him liable for the underlying constitutional violation. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).

B. *Laundry*.

Mr. Lazur also complains about inadequate laundry services at the Lake County Jail. He says he wore the same clothing for two to four weeks at a time because the laundry department was constantly short on clothing. Throughout his entire detention, he would get clean uniforms every two to four weeks, and his towel and sheet were washed only every two to four weeks as well.

Mr. Lazur does not state a claim regarding the infrequent laundry services at the jail. In general, "[h]aving to wear the same clothes for two or three weeks is not a deprivation of constitutional magnitude." *Gordon v. Sheahan*, No. 96 C 1784, 1997 WL 136699, 8 (N.D. Ill. Mar. 24, 1997) (concluding Fourteenth Amendment standard applicable to pretrial detainees, as opposed to Eighth Amendment standard for convicted prisoners, requires a plaintiff to show he was exposed to a "substantial threat of serious physical harm"). In some circumstances, inadequate laundering can pose a risk to an inmate's health by exposing him to another's bodily fluids or communicable diseases. *See Myers v. Ind. Dep't of Corr.*, 655 F. Appx. 500, 503-04 (7th Cir. 2016). But that is not alleged here. Mr. Lazur is able to shower, lessening the impact of wearing the same clothes for a long time, and he doesn't allege that he is prevented from laundering his own clothes in the sink. *See Passmore v. Josephson*, 376 F. Supp. 3d 874, 881-82 (N.D. Ill. 2019) (collecting cases finding no constitutional violation where inmates had the ability to launder their clothes themselves). Finally, Mr. Lazur does not identify any physical harm he experienced from having to wear the same clothes for several weeks at a time.

C. *Toilet Access*.

Mr. Lazur next complains about the access to toilets the inmates had at the jail. He alleges that his cell had a toilet in the open that the eight or nine occupants of the cell had to share. He complains about having to urinate and defecate openly in close, small quarters with other inmates present. This lack of privacy, he says, made the environment in the jail tense. Plus, the toilets could be flushed only two times an hour, so if someone defecated and flushed, and another person had to defecate right after them, the toilet had to sit unflushed for an hour, forcing the cell occupants to inhale the fumes. Further, there was often a wait because eight or nine people shared one toilet. Finally, he alleges he was not given enough toilet paper. The jail passed out toilet paper weekly, but he says it was not enough. He alleges that each roll had approximately 100 small squares, which was enough to use only three times before running out. When he asked for more, he was never given any.

Though it is understandable that Mr. Lazur may be uncomfortable having to use the toilet without privacy, the security needs of a jail make it constitutionally permissible. "Under the due process clause the question is whether the regulation is reasonably related to legitimate penological interests. Surveillance of prisoners is essential, as [*Bell v.*] *Wolfish*[, 441 U.S. 520 (1979),] establishes. Observation of cells, showers, and toilets is less intrusive than the body-cavity inspections *Wolfish* held permissible." *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir. 1995), *overruled in part by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (cleaned up). Even though *Johnson* was partially overruled by *Henry*, that case reaffirmed that "the result in *Johnson* [rejecting a Fourth Amendment challenge to

6

male prisoners' having to undress, shower, and use the toilet without privacy and sometimes under observation by female officers] would have been no different under a reasonableness analysis, given the limited nature of the intrusions at issue and the ever-present institutional concerns over safety and security." *Henry*, 969 F.3d at 783. Thus, the lack of privacy while using the toilet is an unfortunate reality of detention and not a constitutional violation.

Mr. Lazur's complaint about having to share one toilet among eight or nine people does not state a claim. He does not plausibly allege that the this resulted in the toilet being inaccessible. It does not violate the Constitution to have to wait to use the toilet.

Exposure to human waste from unflushed toilets touches on health concerns and general standards of dignity. *See Norfleet v. Stroger*, 297 F. Appx. 538, 540 (7th Cir. 2008). But here, the exposure is limited because the waste is contained in the toilet bowl and lasts at most an hour until the next flush is available. That hour is no doubt unpleasant, but temporary. *See Roundtree v. Dart*, No. 23-2576, 2025 WL 401207, 3 (7th Cir. Feb. 5, 2025) (unpublished decision) (requiring conditions of confinement to be of sufficient "severity and duration" to state a claim under the Fourteenth Amendment).

Finally, Mr. Lazur does not provide enough information about the lack of toilet paper for the court to conclude that the jail failed to provide constitutionally adequate hygiene materials. "Hygienic supplies sufficient to meet basic needs are constitutionally required[.]" *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016). That includes toilet paper. But there is no set amount of toilet paper required by the Constitution. Instead, courts looks to the effect an alleged deprivation has on an inmate. *See Lord v. Beahm*, 952 F.3d

7

902, 905 (7th Cir. 2020) (requiring more than "trivial" injury to show cognizable harm for a claim under 42 U.S.C. § 1983). Here, Mr. Lazur's allegation that a roll of toilet paper lasted only three uses is too vague for the court to infer how frequently Mr. Lazur would be without toilet paper when needed or what harm he suffered from this. Additionally, he does not identify an individual defendant whom he asked for more toilet paper but refused to give it to him. This claim cannot proceed.

      D. *Grooming Materials.*

Mr. Lazur also complains that he could not get a razor because the correctional officers would put out a razor list, but he never got one when he asked for it. Further, he says he was able to cut his hair only three to four times over that eight-month period because either the clippers were broken or his section was locked down during the time when the clippers were available. Absent any identifiable harm from Mr. Lazur not being able to shave or cut his hair as often as he would like, he has not been deprived of a life necessity.

      E. *Hot Showers.*

Mr. Lazur alleges he often went from days to up to two weeks without hot showers because the hot water would go out. Mr. Lazur, however, does not allege that he was harmed by this delay. In general, "it does not violate the Constitution to limit inmates to weekly showers." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). The shorter periods Mr. Lazur had to go without hot water are not constitutionally significant because delaying a shower by a few days does not deny him a life necessity. As for the longer periods, Mr. Lazur was not denied all access to water. He could have taken a

8

shower with cold water if he needed to shower before the hot water was restored. He does not allege the hot water was cut off purposely as punishment or that he experienced any harm from the occasional long period without a shower.

    F. *Ventilation*.

Mr. Lazur also complains that his section was connected through vents to "the hole," where inmates were always throwing feces that didn't get cleaned up right away. As a result, he says he constantly smelled feces in the section. Adequate ventilation is one of life's necessities. But here, there are no allegations that the odor rose to a significant level, such as that present in *Hardeman*, which resulted from hundreds of unflushed toilets holding feces and urine over three days, attracting insects and causing an odor described as a "powerful and putrid smell." *Hardeman*, 933 F.3d at 819. Nor does Mr. Lazur allege he suffered from any health effects from the smell. *Cf. Board. v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (harm from poor ventilation can be shown by "direct physical manifestation of the harm" or that is causes "objectively serious threat to future health"). The unpleasant smell described here does not state a constitutional claim.

    G. *Food Access*.

Finally, Mr. Lazur complains about the food policy at the jail. He says the meal portions are extremely small, and the correctional officers didn't ensure that everyone got a meal. Instead, they simply delivered the trays to each cell, which allowed an inmate to steal another person's tray with no repercussions. In addition, Mr. Lazur alleges people would get beat up for their commissary purchases, and there was no surveillance in the old jail sections to monitor for this behavior. Although the Fourteenth Amendment

requires that pretrial detainees receive adequate food, Mr. Lazur doesn't allege that any of the issues regarding food described in the complaint happened to him, personally. Nor does he allege that he went significant periods without adequate food to the detriment of his health.

For these reasons, the court:

(1) GRANTS Richard Lazur leave to proceed against the Lake County Jail Warden in his individual capacity for compensatory and punitive damages for not providing him sufficient opportunities to exercise in the overcrowded conditions at the Lake County Jail in violation of the Fourteenth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Lake County Sheriff, Assistant Deputy Warden, Gore, Stozer, and Classification Officer;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Lake County Jail Warden at the Lake County Jail, with a copy of this order and the complaint (ECF 6);

(5) ORDERS the Lake County Sheriff to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), the Lake County Jail Warden to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-

1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

April 2, 2025                                             *s/ Damon R. Leichty*
                                                          Judge, United States District Court